**John MONROE, Dora Monroe, Jimmy Harris, Larry Johnson and Similarly Situated Persons, Plaintiffs,**

v.

**CITY OF WOODVILLE, MISSISSIPPI; George J. Gonda, as Mayor; Gary D'Aquilla, Charles James, Andy J. Lewis and Ron Senko, in Their Capacity as Members of the Board of Aldermen of the City of Woodville; and Fred Townsend, City Clerk, Defendants.**

Civ. A. No. W85–0088(B).

United States District Court, S.D. Mississippi, W.D.

June 10, 1986.

Southwest Miss. Legal Services, Willie L. Rose, McComb, Miss., for plaintiffs.

Richard T. Watson, Woodville, Miss., Dennis L. Horn, Hazelhurst, Miss., for defendants.

### MEMORANDUM OPINION AND ORDER

BARBOUR, District Judge.

Presently before the Court for disposition in this Voting Rights Act case is Defendants' Motion for Summary Judgment. The case presents the straight-forward question of whether at-large elections for city aldermen violate the "results" standard of Section 2 of the Voting Rights Act where black voters constituted a pre-existing effective majority of the electorate.

According to the 1980 census, the City of Woodville, Mississippi, has a population of 1,512 residents. Of this population, 972 residents are black (64.3%), and 540 residents are white (35.7%). With respect to voting age population of age 18 or over ("VAP"), there are 632 Blacks (60.5%) and 412 whites (39.5%). The five city aldermen are elected at-large. One of the five aldermen currently serving is black.

Notwithstanding this uncontroverted statistical evidence, Plaintiffs, duly qualified, black electors of Woodville, nevertheless contend that the City of Woodville's cur-

rent at-large method of electing its five aldermen has the result of diluting black voting strength in violation of Section 2 of the Voting Rights Act, as amended, 42 U.S.C.A. § 1973 (Supp.1985) and of the Constitution.

It is clear from the Complaint and from the briefs of Plaintiffs in response to the Motion for Summary Judgment, that the thrust of their suit is that the at-large election plan has the result of diluting black voting strength in violation of Section 2 of the Voting Rights Act and of the Fourteenth and Fifteenth Amendments to the Constitution. They allege the well-known White-Zimmer factors referred to by the Senate Judiciary Committee report on the 1982 Amendment to the Voting Rights Act, S.Rep. No. 417, 97th Cong., 2d Sess. at 28–29, reprinted in 1982 U.S.Code Cong. & Ad.News 177 (1982), which must be considered by the Court in applying the results test mandated by Section 2, as amended.

However, even assuming that the Plaintiffs will prevail on each of those factors and giving no weight to the fact that a Black has been elected under the at-large plan, we think that the population proof offered by Defendant negates a prima facie case of the dilution of minority votes in the City of Woodville's at-large system of electing Aldermen. The salient fact of the matter is that under the current system, Blacks are not only in the majority but that the City of Woodville as a whole is a "safe" district where Blacks constitute, as a matter of law, an *effective majority* of the voting age population. As noted initially, Blacks comprise 64.3% of the total population of the City and 60.5% of the voting age population. In the remedial context, a

black VAP of 60%, or a black percentage of the total population of 65% or more, has achieved standard acceptance in the federal courts as providing a fair opportunity for Blacks to participate in the political process and elect a candidate or candidates of their choice. *See generally Ketchum v. Byrne*, 740 F.2d 1398, 1415–17 (7th Cir.1984) (collecting cases). As stated in *State of Mississippi v. United States*, 490 F.Supp. 569, 575 (D.D.C.1979) (three-judge panel), *aff'd*, 444 U.S. 1050, 100 S.Ct. 994, 62 L.Ed.2d 739 (1980):

> [i]t has been generally conceded that, barring exceptional circumstances such as two white candidates splitting the vote, a district should contain a black population of at least 65 percent or a black VAP of at least 60 percent to provide black voters with an opportunity to elect a candidate of their choice.

With respect to elections held on an at-large basis in the City of Woodville, both the 60% VAP and, in essence, the 65% total population requirements, are met. Accordingly, we hold that a "minority" voting dilution claim cannot stand and that any remedial action from a federal court abolishing or modifying the at-large election system would be presumptively inappropriate.[1]

Other than several affidavits which are manifestly of a conclusory nature and are insufficient, the only evidentiary materials submitted by Plaintiffs to the Court in opposition to Defendant's Motion are the City's responses to certain portions of Plaintiff's First Set of Interrogatories and two plans proposed by Plaintiffs which would divide the City of Woodville into five, or four, single-member aldermanic districts.[2] The answers to interrogatories

---

**1.** This case is clearly distinguishable from *Jordan v. City of Greenwood,* 599 F.Supp. 397 (N.D. Miss.1984), which is heavily relied upon by Plaintiffs. In *Greenwood,* Blacks composed only a bare majority of the total population (52.0%) and, more importantly, only 46.2% of the voting age population. 599 F.Supp. at 400. There was no pre-existing effective majority in that case, and no Black had ever been elected to the City Council under at-large voting.

**2.** The proposed five-ward plan would have black population percentages of 96.6%, 81.0%, 21.3%, 68.2%, and 46.4%. The proposed four-ward plan would have black population percentages of 87.0%, 70.2%, 58.9% and 41.4%. In general terms, the five-ward plan would result in three "packed," or concentrated, black districts, and one "impact" district in which black voters could exercise a significant influence upon the outcome of an election. The four-ward plan

submitted to the Court demonstrate that Blacks have unsuccessfully run for Alderman in Woodville, and that only one Black, who currently serves, has been elected to that office. Where, as here, black voters have a pre-existing effective majority, the mere fact that elections have been lost by black candidates, or that proportional representation has not been achieved, does not, standing alone, warrant the exercise in "political engineering" sought by Plaintiffs in the instant case. *See Terrazas v. Clements,* 581 F.Supp. 1329, 1358–59 (N.D.Tex. 1984) (three-judge panel). As observed in a slightly different context by the panel in *Terrazas:*

> [w]here the absence of proportional representation results simply from the loss of elections rather than a "built-in bias" against a minority group, that group's voting strength has not been "cancelled out" in any constitutional sense. *Whitcomb v. Chavis,* 403 U.S. [124] at 152–53, 91 S.Ct. [1858] at 1873–74 [29 L.Ed.2d 363 (1971)]. The same result obtains under the section 2 test unless the courts attach no meaning either to the Congressional caveat against proportional representation, 42 U.S.C.A. § 1973(b), or to the explicit codification of pre-*Bolden* law.

*Id.* *Accord, Seastrunk v. Burns,* 772 F.2d 143, 154 (5th Cir.1985). The meager evidentiary materials submitted to the Court in response to Defendants' Motion do not contain specific facts which point to any "built-in" bias or to any purposeful discrimination regarding Woodville's at-large system of electing aldermen. Accordingly, judgment in Defendants' favor is appropriate with respect to Plaintiffs' constitutional and Section 2 claims.

Finally, while this Court is not called upon to decide whether the principle decided here is applicable to larger municipalities, the Court does observe that, in a town with a population of approximately 1,500 and a physical area commensurate thereto, a district composed of the entire area of the town and of its entire population is not would result in two "packed" and two "impact" districts.

of such a size which would result in Blacks having less opportunity to participate in the political process or elect representatives of their choice. Indeed, it can be effectively argued from a non-legal standpoint that at-large elections under which each alderman will be answerable to and accessible to the entire electorate will produce a more responsive government to the needs of individual citizens than would a ward system.

For the reasons stated herein, the Defendants' Motion for Summary Judgment is sustained and it is ordered the the Complaint is dismissed with prejudice. A separate judgment will be entered by the Court.